## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **FRED W. HOLLAND, M.D.,** | ) | Case No. 3:18-cv-00490 |
| | ) | |
| Plaintiff, | ) | Judge James G. Carr |
| | ) | Magistrate Judge James R. Knepp II |
| vs. | ) | |
| | ) | |
| **MERCY HEALTH, et al.,** | ) | **DEFENDANTS' PARTIAL MOTION FOR** |
| | ) | **JUDGMENT ON THE PLEADINGS** |
| Defendants. | ) | |

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants Mercy Health ("Mercy"), Mercy Health – St. Vincent Medical Center, LLC ("St. Vincent"), Iman Andrabi, M.D. ("Dr. Andrabi"), and Fayyaz Hashmi, M.D. ("Dr. Hashmi") (collectively, "Defendants"), hereby move for partial judgment on the pleadings on the following claims asserted in the Complaint of Plaintiff, Fred W. Holland, M.D.:

1. All claims asserted against Dr. Andrabi and Dr. Hashmi; and

2. All claims asserted against Mercy Health and Mercy Health-St. Vincent Medical Center, LLC except for the Title VII and O.R.C. Ch. 4112 national origin discrimination claim and retaliation claim premised on Dr. Holland's EEOC charge, which Defendants strenuously contend lack merit but recognize may require development of the record before being dismissed.

Respectfully submitted,


*/s/ Thomas J. Wiencek*
Thomas J. Wiencek (0031465)
MERCY HEALTH
388 South Main Street
Suite 500
Akron, Ohio 44311-4407
Phone: (513) 639-0196
Fax: (330) 253-8601
tjwiencek@mercy.com

R. Scot Harvey (0046910)
BROUSE MCDOWELL, LPA
388 South Main Street
Suite 500
Akron, Ohio 44311
Phone: (330) 535-5711
Fax: (330) 253-8601
sharvey@brouse.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of May 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Thomas J. Wiencek*
Thomas J. Wiencek (#0031465)

2

## TABLE OF CONTENTS

I.    BRIEF STATEMENT OF ISSUES TO BE DECIDED.........................................................1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT...................................................2

III.  LAW & ANALYSIS ........................................................................................................3

A.    Dr. Holland Fails to State a Plausible Race Discrimination Claim Against Defendants under Either Title VII or O.R.C. Ch. 4112 (Counts I and VI). ................................... 4

B.    Dr. Holland Fails to State a Plausible Harassment Claim Against Defendants under Title VII (Count I). ................................................................................................... 6

C.    Dr. Holland Fails to State Plausible Title VII or O.R.C. Ch. 4112 Claims Against Drs. Andrabi and Hashmi (Counts I and VI). ................................................................. 7

  1.  Dr. Holland Failed to Exhaust His Title VII Administrative Remedies Against Drs. Andrabi and Hashmi (Count I)............................................................. 7

  2.  Drs. Hashmi and Andrabi Were Not Dr. Holland's "Employers" Within the Meaning of Title VII and Cannot Be Sued and Held Liable to Him Under Title VII (Count I). ................................................................................... 8

  3.  Drs. Hashmi and Andrabi Were Not Dr. Holland's Supervisors or Managers and Cannot Be Sued and Held Individually Liable to Him Under O.R.C. Ch. 4112 (Count VI). ............................................................................... 10

D.    Dr. Holland Fails to State a Plausible Retaliation Claim Against Defendants Based on His Alleged Opposition Activity in Reporting Discrimination (Count II). .............. 12

E.    Dr. Holland Fails to State a Plausible Title VII or O.R.C. Ch. 4112 Retaliation claim Against Drs. Andrabi and Hashmi (Count II)........................................................ 15

F.    Dr. Holland Fails to State a Plausible Claim under Section 1981 (Count III)........... 16

G.    Dr. Holland Fails to State a Plausible Claim of Tortious Interference with Contract (Count IV).......................................................................................................... 18

H.    Dr. Holland Fails to State a Plausible Claim of Intentional Interference with Business Relations (Count V). .......................................................................................... 20

I.    Dr. Holland Fails to State a Plausible Claim under Ohio's Whistleblower Statute, O.R.C. § 4113.52 (Count VII). ........................................................................... 21

  1.  Dr. Holland's Whistleblower claim is Barred By the Applicable Statute of Limitations........................................................................................... 22

  2.  Dr. Holland Fails to State a Plausible Whistleblower Claim Because he Failed to Strictly Adhere to the Procedural Requirements of the Statute. ............... 24

  3.  Dr. Holland Fails to State a Plausible Ohio Whistleblower Claim Against Dr. Andrabi and Dr. Hashmi Because They Cannot Be Sued and Held Liable Under the Whistleblower Statute. .................................................................. 26

J.    Dr. Holland Fails to State a Plausible Claim for Intentional Infliction of Emotional Distress (Count VIII)........................................................................................... 26

1.    Dr. Holland Was Not Subjected to "Extreme and Outrageous" Conduct. .... 27

2.    Dr. Holland's Alleged Mental Anguish is Not Sufficiently "Severe and Debilitating."............................................................................................... 29

IV.    CONCLUSION ...........................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ...................................................... 17, 18

*Anderson*, 108 A.D.3d 900, 900 (N.Y. Ct. App. 2013).................................................................. 23

*Armstrong v. Trans-Service Logistics, Inc.*, 5th Dist. App. No. 04CA015, 2005-Ohio-2723............. 26

*Arnold v. Wilder*, 657 F.3d 353 (6th Cir. 2011)............................................................................ 29

*Aronhalt v. Castle*, 10th Dist. Franklin No. 12AP-196, 2012-Ohio-5666, ¶29, *app. denied*, 135 Ohio St.3d 1414 (2013) (*citing* O.R.C. 4113.52(D) ........................................................................... 22

*Ashcroft v. Iqbal*, 566 U.S. 662, 678, (2009)................................................................................. 3

*Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989) ..... 12, 13, 14

*Boyd v. Archdiocese of Cincinnati*, 2nd Dist. App. No. 25950, 2015-Ohio-1394.............................. 27

*Brown v. Guardsmark, LLC*, 2013 WL 3991911, *7 (S.D. Ohio Aug. 2, 2013) ............................... 14

*Brown v. O'Reilly Automotive Stores, Inc.*, 8th Dist. App. No. 102694, 2015-Ohio-5146........... 13, 14

*Burt v. Maple Knoll Communications, Inc.*, 2016 WL 3906233 (S.D. Ohio July 19, 2016) .............. 8

*Cf. Vance v. Ball State Univ.*, 570 U.S. 421, 450, 453 (2013)........................................................ 10

*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001), *opinion supp.on denial of reh'g*, 266 F.3d 407 (6th Cir. 2001) ......................................................................................... 16

*Coch v. GEM Industrial, Inc.*, 6th Dist. App. No. L-04-1357, 2005-Ohio-3045 ........................ 12, 13

*Cokely v. Smith*, 2nd Dist. App. No. 21802, 2007-Ohio-5650.................................................... 27, 30

*Contreras v. Ferro Corp.*, 73 Ohio 652 N.E.2d 940 (Ohio 1995)................................................... 24

*Culler v. Exal Corp.*, 193 F.Supp.3d 850, 852 (N.D. Ohio 2016) .................................................. 27

*D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 758 (2014) .... 3, 4

*David v. Matter*, 6th Dist. App. No. S-17-006, 2017-Ohio-7351 ................................................... 28

*Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 710 (S.D. Ohio 2014) .......................... 30

*Edwards v. Ohio Institute of Cardiac Care*, 170 Ohio App.3d 619, 636 (2nd Dist. App. 2007) ........ 10

*El-Zabet v. Nissan North America, Inc.*, 211 Fed. Appx. 460, 462-463 ........................................... 17

*Fox v. Eagle Distributing Co.*, 510 F.3d 587, 591 (6th Cir. 2007) ................................................... 13

*Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999) ............................... 19

*Fulst v. Thompson*, No. 2009 WL 4153222, at *4 (S.D. Ohio Nov. 20, 2009)................................. 10

*Genaro v. Cent. Transp., Inc.*, 703 N.E.2d 782, 787-88 (Ohio 1999).............................................. 10

*Gibson v. Shelly Co.*, 314 Fed. Appx. 760, 767 (6th Cir. 2008) ...................................................... 4

*Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) ............................................................... 10

*Haney v. Chrysler Corp.*, 121 Ohio App.3d 137 (6th Dist. App. 1997) ...................................... 25, 26

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) ................................................... 6

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) ................................ 4

*Herrera*, 545 Fed. Appx. at 500 .......................................................................................... 12

*Herrington v. DaimlerChrysler Corp.*, 262 F. Supp. 2d 861, 865 (N.D. Ohio 2003), *aff'd*, 125 Fed. Appx. 23 (6th Cir. 2004) ........................................................................ 24

*Holmes v. City of Cincinnati, supra*, 2016 WL 1625815 at *5 ........................................... 9

*Hunter v. Secretary of U.S. Army*, 565 F.3d 986 (6th Cir. 2009) ...................................... 7

*Jackson v. Champaign National Bank & Trust Co.*, 2000 WL 1376534, *7 (10th Dist. App. Sept. 26, 2000), *app. denied*, 91 Ohio St.3d 1448 (2001) .................................................................. 14

*Jackson v. City of Columbus*, 67 F.Supp.2d 839, 868 (S.D. Ohio 1998), *affirmed*, 194 F.3d 737 (6th Cir. 1999) ............................................................................................................... 30

*Keehan v. Certech, Inc.*, 2015 WL 8483179, at *3 (N.D. Ohio Dec. 10, 2015) ......................... 21, 26

*Keehan v. Korenowski*, 9th Dist. App. No. 28221, 2017-Ohio-7050 ................................ 26

*Keesecker v. Midland Cty. Educ. Serv. Agency*, 2006 WL 680864, at *8 (E.D. Mich. Mar. 16, 2006) ........................................................................................................................... 23

*Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ...................................................... 4

*Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 870-871 (N.D. Ohio 2013) ............... 29

*Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134 (1997), *cert. denied*, 118 S.Ct. 586 (1997) ....... 28

*Laughlin v. City of Cleveland*, 102 F.Supp.3d 944, 949 (N.D. Ohio 2015), *aff'd*, 633 Fed. Appx. 312 (6th Cir. 2015) ................................................................................................... 12

*Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 501 (6ht Cir. 2006) .............................. 6, 7

*Mawaldi v. St. Elizabeth Health Ctr.*, 381 F. Supp. 2d 675, 684 (N.D. Ohio 2005) .......... 9

*McCarthy v. City of Cleveland Heights*, 65 Ohio App.3d 216, 218 (8th Dist. 1989) ........ 30

*Minnich v. Cooper Farms, Inc.*, 39 Fed. Appx. 289, 296 n.8 (6th Cir. 2002) ................. 10

*Moniz v. Cox*, 512 Fed. Appx. 495, 500-501 (6th Cir. 2013), *cert. denied*, 571 U.S. 860 (2013) ....... 18

*Moore v. Impact Community Action*, 10th Dist. App. No. 12AP-1030, 2013-Ohio-3215 ................. 28

*Muir v. Chrysler LLC*, 563 F.Supp.2d 783, 789 (N.D. Ohio 2008) ................................. 12

*Office Depot, Inc. v. Impact Office Prod., LLC*, 821 F. Supp. 2d 912, 924 (N.D. Ohio 2011) .......... 21

*Owhor v. St. John Health-Providence Hospital*, 503 Fed. Appx. 307, 312 (6th Cir. 2012) ................ 6

*Paugh v. Hanks*, 6 Ohio St.3d 72 (1983) ........................................................................ 29, 30

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) ......... 4

*Robinson v. Quasar Energy Group, LLC*, 8th Dist. App. No. 101062, 2014-Ohio-4218, ¶20, *app. denied*, 143 Ohio St.3d 1418 (2015) ................................................................................. 13

*Robinson v. Rueggeberg*, 2015 WL 4698432 (S.D. Ohio Aug. 6, 2015), *adopted*, 2015 WL 5117949 (S.D. Ohio Sept. 1, 2015) ................................................................................. 8, 9

*Sam Han v. University of Dayton*, 541 Fed. Appx. 622 (6th Cir. 2013), *cert. denied*, 134 S.Ct. 2699 (2014) ................................................................................................................................ 16

*Savoy v. University of Akron*, 2009 WL 3417588, *2 (N.D. Ohio Oct. 16, 2009) ........................... 18

*Sharockman v. Lifespan of Minnesota, Inc.*, 2016 WL 281267, at *5 (Minn. Ct. App. Jan. 25, 2016) ................................................................................................................................................. 23

*Simmons v. Med. Coll. of Ohio*, 2004 WL 2713082, at *2 (N.D. Ohio Nov. 23, 2004) ...................... 8

*Smart v. Haupt*, 2015 WL 3540190, *3 (N.D. Ohio June 4, 2015) ................................................... 5

*Sparks v. University Hospitals Health Systems, Inc.*, 2014 WL 792162, *2 (N.D. Ohio Feb. 25, 2014) ................................................................................................................................................. 30

*St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) ................................................ 17, 18

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir.2010) ................................................... 4

*Wade v. Knoxville Utilities Board*, 259 F3d 452, 464 (6th Cir. 2001) ............................................ 12

*Wathen v. General Electric Co.*, 115 F.2d 400 (6th Cir. 1997) ...................................................... 9

*Welling v. Weinfeld*, 113 Ohio St.3d 464 (2007) ......................................................................... 27

*Willoughby v. Allstate Ins. Co.*, 104 Fed. Appx. 528 (6th Cir. 2004) ............................................ 14

*Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 Fed. Appx. 717, 723 (6th Cir. 2017) ..................................................................................................................................... 19

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983) ................................................ 27, 28

*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) ............................................... 8

*Zeman v. Goodrich Corp.*, 2005 WL 1668498, *20 (N.D. Ohio July 16, 2005) ............................... 26

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98 (1982) ................................................... 8

## Statutes

42 U.S.C. §1981 ..................................................................................................................... passim

O.R.C. §4113.52 .................................................................................................................... passim

O.R.C. Ch. 4112 ..................................................................................................................... passim

## Rules

Fed. R.Civ.P. 12(c) ........................................................................................................................ 3

Rule 12(b)(6) ................................................................................................................. 3, 18, 26, 30

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **FRED W. HOLLAND, M.D.,** | ) | Case No. 3:18-cv-00490 |
| | ) | |
| Plaintiff, | ) | Judge James G. Carr |
| | ) | Magistrate Judge James R. Knepp II |
| vs. | ) | |
| | ) | |
| **MERCY HEALTH, et al.,** | ) | **DEFENDANTS' MEMORANDUM IN** |
| | ) | **SUPPORT OF PARTIAL MOTION** |
| Defendants. | ) | **FOR JUDGMENT ON THE PLEADINGS** |

---

### I.   BRIEF STATEMENT OF ISSUES TO BE DECIDED

The issues to be decided upon Defendants' Motion for Judgment on the Pleadings are:

1.   Whether Plaintiff, Dr. Fred W. Holland, fails to state a claim of race discrimination under Title VII of the Civil Rights Act of 1964 or O.R.C. Ch. 4112 upon which relief can be granted in Count I and Count VI of his Complaint;

2.   Whether Plaintiff fails to state a claim of hostile work environment based on race or national origin under Title VII upon which relief can be granted in Count I of his Complaint;

3.   Whether Plaintiff fails to state a claim of retaliation under Title VII, O.R.C. Ch. 4112, or 42 U.S.C. §1981, based on his alleged reports of discrimination, upon which relief can be granted in Count II of his Complaint;

4.   Whether Plaintiff fails to state a claim of discrimination under 42 U.S.C. §1981 upon which relief can be granted in Count III of his Complaint;

5.   Whether Plaintiff fails to state a claim of tortious interference with contract upon which relief can be granted in Count IV of his Complaint;

6.   Whether Plaintiff fails to state a claim of tortious interference with business relations upon which relief can be granted in Count V of his Complaint;

7.   Whether Plaintiff fails to state a claim for violation of Ohio's whistleblower statute, O.R.C. §4113.52, upon which relief can be granted in Count VII of his Complaint; and

8.   Whether Plaintiff fails to state a claim of intentional infliction of emotional distress upon which relief can be granted in Count VIII of his Complaint.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

The "grab bag" Complaint filed by Dr. Holland against Mercy Health ("Mercy"), Mercy Health – St. Vincent Medical Center, LLC ("St. Vincent"), Iman Andrabi, M.D. ("Dr. Andrabi"), and Fayyaz Hashmi, M.D. ("Dr. Hashmi") seemingly asserts every conceivable claim for relief: race and national origin discrimination and harassment under Title VII (Count I); retaliation (Count II); discrimination under 42 U.S.C. §1981 (Count III); tortious interference with contract (Count IV); intentional interference with business relations (Count V); race and national origin discrimination under O.R.C. Ch. 4112 (Count VI); violation of Ohio's whistleblower statute, O.R.C. §4113.52 (Count VII); and intentional infliction of emotional distress (Count VIII).

Despite this cornucopia of claims, however, the story behind this case is relatively simple. Dr. Holland had a Physician Employment Agreement with the Toledo Clinic. St. Vincent and the Toledo Clinic were parties to a Service Agreement under which the Toledo Clinic provided Dr. Holland's services to St. Vincent for a fee.[1] As a result of his assignment to St. Vincent, Dr. Holland worked with Drs. Hashmi and Andrabi as cardiovascular surgeons there.

Dr. Holland, however, believes he was a better cardiothoracic surgeon than Dr. Hashmi. He was upset when Dr. Hashmi received more patient consults and cardiovascular cases than him. Dr. Holland, a white male, believes Dr. Hashmi was treated more favorably than him because Drs. Hashmi and Andrabi are both Pakistani and are friends who shared the same medical school. Dr. Holland's "Pakistani posse" theory is also the basis of his claim that St. Vincent ultimately terminated the Service Agreement with the Toledo Clinic. And, Dr. Holland throws in the obligatory

---

[1] Dr. Holland alleges St. Vincent was his "employer" for purposes of his statutory discrimination and retaliation claims. This theory is based on the St. Vincent-Toledo Clinic Service Agreement. (Complaint, ¶¶19-23.) The facts and the law will ultimately establish, however, that Dr. Holland was employed solely by the Toledo Clinic, not St. Vincent. This will be addressed at the summary judgment stage.

retaliation claim that he was subjected to adverse employment actions because he reported discrimination and filed an EEOC charge.

At best, although without merit, the only claims that can be averred here to get beyond the pleading stage is that Dr. Holland allegedly was treated unfairly because he is not Pakistani and was retaliated against because of his EEOC charge. Nevertheless, Dr. Holland, through paragraph after paragraph of his Complaint, employs irrelevant hyperbole and sensational rhetoric about the quality of Dr. Hashmi's work to pad his claims and cloud their deficiencies. He apparently believes that if he disparages the quality of Dr. Hashmi's work often enough throughout his Complaint he can turn this case into something more than what it is – a dispute by a disgruntled doctor who alleges his Pakistani colleagues treated him disfavorably because he does not share their Pakistani national origin. Dr. Holland therefore fails to state claims upon which relief can be granted and his claims, other than his national origin discrimination claim and his retaliation claim based on the EEOC charge (as asserted against the corporate defendants only),[2] should be dismissed with prejudice.

### III.    LAW & ANALYSIS

Courts analyze Rule 12(c) motions for judgment on the pleadings under the same standard as that for Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 758 (2014). The U.S. Supreme Court now applies a heightened standard that requires pleadings to contain "sufficient factual matter… that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678, (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008).

This *Twombly/Iqbal* "plausibility" standard is governed by several underlying principles:

---

[2] Although Mercy Health is not a proper party to Dr. Holland's claims, Defendants are not addressing this issue at this time.

- "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

- The court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*, *quoting Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006).

- "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio*, 747 F.3d at 383, *quoting Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir.2010).

- "'[A] formulaic recitation of the elements of a cause of action will not do.'" *Id.*, *quoting Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012).

- A plaintiff must allege sufficient _facts_ to state a plausible claim. *Iqbal*, 556 U.S. at 696, *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

- In short, "a complaint cannot survive a motion to dismiss … unless the complaint shows that the defendant's wrongdoing is plausible, not just possible." *Estate of Barney*, 714 F.3d at 929.

## A. Dr. Holland Fails to State a Plausible Race Discrimination Claim Against Defendants under Either Title VII or O.R.C. Ch. 4112 (Counts I and VI).

Dr. Holland's Title VII and O.R.C. Ch. 4112 claims are based on alleged "national origin and/or racial discrimination."[3] (Complaint, ¶142.) Courts apply the same legal standards to Title VII and Ch. 4112 claims. *Gibson v. Shelly Co.*, 314 Fed. Appx. 760, 767 (6th Cir. 2008).

A review of Dr. Holland's substantive allegations establishes that he is conflating national origin with race. In this regard, Dr. Holland alleges:

- Dr. Holland eventually became aware "that Hashmi's superior and fellow Pakistani Andrabi protected Hashmi[.]" (Complaint, ¶33).

- "Indeed, it was openly discussed at Defendant St. Vincent that 'the Pakistanis' ran Defendant St. Vincent to the exclusion of others." (*Id.*, ¶38.)

- Drs. Andrabi and Hashmi designed a "scheme to force referrals to be provided to Hashmi," which included Hashmi's Pakistani brother and Dr. Ameer Kabour "conspiring with Hashmi … to cause business to be provided to him to the exclusions of superior physicians including Dr. Holland and others not of Pakistani descent." (*Id.*, ¶¶43, 44.)

---

[3] Count VI, which asserts the O.R.C. Ch. 4112 claim, does not contain this specific allegation, but is based on the alleged discriminatory conduct that forms the basis of Count I. (Complaint, ¶190.)

4

- Dr. Hashmi controlled patient consults "with Andrabi continuing to protect him internally at the hospital to the discriminatory exclusion of Dr. Holland and other non-Pakistani physicians." (*Id.*, ¶49.)

- Dr. Hashmi was angry about an appointment given to Dr. Holland at St. Anne's but was unable to interfere with this "because 'the Pakistani's' did not directly control St. Anne's." (*Id.*, ¶57.)

- "Hashmi continued to receive a majority of the cardiothoracic cases that came through Mercy and/or St. Vincent Hospital while Dr. Holland and another non-Pakistani physician were continually being frozen out despite the STS data reports." (*Id.*, ¶69.)

- The alleged Andrabi and Hashmi scheme continued to deprive Dr. Holland of referrals and resulted in "another non-Pakistani physician also being denied referrals." (*Id.*, ¶74.)

- As part of the alleged "plot" to constructively discharge Dr. Holland, "Hashmi brought in Dr. Sulaiman Hassan, a Pakistani cardiothoracic surgeon (who had not practiced in the US for a number of years) for a "tour' of the hospital," and Dr. Hassan replaced Dr. Holland. (*Id.*, ¶¶76, 78, 79.)

- "Further, upon information and belief, Hasan, Hashmi and Andrabi all went to the same medical school in Pakistan." (*Id.*, ¶77.)

- "After essentially offering Dr. Holland's contract to another Pakistani physician that had not practiced in the United States for the past ten years," Arquilla wrote a letter to the Toledo Clinic terminating the Service Agreement by which Dr. Holland's services were being provided at St. Vincent. (*Id.*, ¶82.)

Thus, the alleged facts underlying Dr. Holland's race discrimination claim <u>all</u> relate only to Dr. Holland's belief that he was treated unfairly because he is not of Pakistani national origin. The Complaint contains <u>no</u> factual allegation making it plausible to believe the alleged discrimination was motivated by Dr. Holland's race.

Dr. Holland's generic allusion to "racial discrimination" in Count I of his Complaint (and his allusion to being "white" in Count VI, which asserts his 42 U.S.C. §1981 claim) does not salvage his Title VII and O.R.C. Ch. 4112 race discrimination claims. "[V]ague and purely conclusory assertions of race discrimination … are insufficient to raise a right to relief for race discrimination – under any federal civil rights law or statute – above a speculative level." *Smart v. Haupt*, 2015 WL 3540190, *3 (N.D. Ohio June 4, 2015); See also, *House v. Rexam Beverage Can Co.*, 630 Fed. Appx. 461 (6th

Cir. 2015) (age claim dismissed based on general allegations that plaintiff was treated less favorably than substantially younger employees.)

**B.**   **Dr. Holland Fails to State a Plausible Harassment Claim Against Defendants under Title VII (Count I).**

Dr. Holland attempts to assert a harassment claim against Defendants by alleging, as part of his Title VII claim based on discrete acts of alleged discrimination, that these discrete acts "had the purpose or effect of unreasonably interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive work environment." (Complaint, ¶144.) This formulaic description of a harassment claim is not enough to permit this claim to proceed.

To support a Title VII race or national origin harassment claim, Dr. Holland must establish, *inter alia*, that the alleged harassment (a) was based on race or national origin, and (b) had the effect of unreasonably interfering with his work performance and created an objectively intimidating, hostile, or offensive work environment. *Owhor v. St. John Health-Providence Hospital*, 503 Fed. Appx. 307, 312 (6th Cir. 2012). Regarding the latter element, "[a] hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Long v. Ford Motor Co.*, 193 Fed. Appx. 497, 501 (6ht Cir. 2006) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

As is the case with Dr. Holland's race discrimination claim, his race harassment claim fails because he only alleges facts about national origin and not race. His Complaint contains no factual allegations making it plausible to believe the alleged harassment was motivated by Dr. Holland's race. His race harassment claim thus fails.

In addition to this failure, Dr. Holland's allegations do not allege a "workplace permeated with discriminatory intimidation, ridicule, and insult that that is sufficiently severe or pervasive to

alter the conditions of [Dr. Holland's] employment and create an abusive working environment."
*Long*, *supra*. Instead, his harassment claim is based only on discrete acts of alleged discrimination –
unequal patient consults, termination of the St. Vincent-Toledo Clinic Service Agreement, not
executing the call agreement, "stripping" his assistant from him, and discontinuing his status as St.
St. Anne's medical director. (Complaint, ¶¶39-41, 49, 69, 82-83, 104, 107, 112-113, 122.) His
incantation of the magic words, "[t]he conduct described had the purpose or effect of unreasonably
interfering with Plaintiff's work performance and/or creating an intimidating, hostile or offensive
work environment" (Complaint, ¶144) do not transform his discrimination claim into a harassment
claim. *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 993-4 (6th Cir. 2009) (rejecting plaintiff's
attempt to avert the statute of limitations bar to her discrimination claim by labeling it a hostile work
environment claim so as to invoke a continuing violation theory, because a claim based on discrete
acts of discrimination does not also constitute a hostile work environment claim.) Accordingly, Dr.
Holland's harassment claim, based on nothing more than tagging a recital of the legal definition of a
hostile work environment to his discrete Title VII claim, cannot proceed.

**C.     Dr. Holland Fails to State Plausible Title VII or O.R.C. Ch. 4112 Claims Against Drs. Andrabi and Hashmi (Counts I and VI).**

**1.     Dr. Holland Failed to Exhaust His Title VII Administrative Remedies Against Drs. Andrabi and Hashmi (Count I).**

Before commencing this action, Dr. Holland filed an EEOC charge alleging he was
constructively discharged for discriminatory reasons. (Complaint ¶¶12, 97.) However, Dr. Holland's
EEOC charge identifies only "Mercy Health System" and "Mercy Health System – St. Vincent
Medical Ctr." as the respondents, not Dr. Andrabi or Dr. Hashmi. (*See* Dr. Holland's Charge of

Discrimination, attached hereto as Exhibit A.)[4] Thus, Dr. Holland did not identify either Dr. Hashmi or Dr. Andrabi as respondents to his EEOC charge. (*Id.*)

"Before proceeding with a Title VII claim, a plaintiff must exhaust, as a condition precedent, all administrative remedies." *Simmons v. Med. Coll. of Ohio*, 2004 WL 2713082, at *2 (N.D. Ohio Nov. 23, 2004)(*citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392-98 (1982)). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). This means Dr. Holland cannot bring a Title VII claim against a defendant who he did not identify as a respondent to his EEOC charge. *Burt v. Maple Knoll Communications, Inc.*, 2016 WL 3906233 (S.D. Ohio July 19, 2016); *Robinson v. Rueggeberg*, 2015 WL 4698432 (S.D. Ohio Aug. 6, 2015), *adopted*, 2015 WL 5117949 (S.D. Ohio Sept. 1, 2015).

Hence, because Dr. Holland has failed to exhaust his administrative remedies against Drs. Andrabi and Hashmi, his Title VII race and national origin discrimination claims asserted against them in Count I of his Complaint cannot proceed.

2.   **Drs. Hashmi and Andrabi Were Not Dr. Holland's "Employers" Within the Meaning of Title VII and Cannot Be Sued and Held Liable to Him Under Title VII (Count I).**

Notably, in paragraph 1 of his complaint, Dr. Holland alleges that "[a]t all times relevant hereto," he "was an employee of Defendants Mercy Health and Mercy Health – St. Vincent Medical Center LLC." He does not identify Dr. Andrabi or Dr. Hashmi as his "employers." Indeed, at various points in his complaint, Dr. Holland distinguishes Dr. Andrabi from "Defendants," which supports the conclusion that he always intended to identify only Mercy and St. Vincent as his alleged

---

[4] Even though Dr. Holland's EEOC charge is not attached to his Complaint, it should be considered in determining Defendants' motion for judgment on the pleadings because the Complaint refers to it and it forms the basis of Dr. Holland's allegation that he has exhausted his administrative remedies. *Holmes v. City of Cincinnati*, 2016 WL 1625815, *3 (S.D. Ohio April 25, 2016) (granting defendant's motion for judgment on the pleadings and considering copies of the plaintiff's EEOC charges submitted by defendants with their motion because, although they were not attached to the plaintiff's complaint, they were referred to therein).

"employer." (Complaint ¶s98, 104, 106, 138.) Nonetheless, attempting to hold Drs. Hashmi and Andrabi individually liable under Title VII, Dr. Holland makes the bald conclusions that all "Defendants are employers within the meaning of the statutes under which Plaintiff's claims are brought" (Complaint, ¶8), and identifies all "Defendants" as parties to his Title VII race and national origin discrimination claims. (Complaint, Count I.)

Dr. Holland's conclusion that Drs. Hashmi and Andrabi are "employers" within the meaning of Title VII is directly contrary to *Wathen v. General Electric Co.*, 115 F.2d 400 (6th Cir. 1997), a Title VII case wherein the Sixth Circuit stated: "In sum, we find that the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Id.*, 115 F.2d at 406.[5] *See also Mawaldi v. St. Elizabeth Health Ctr.*, 381 F. Supp. 2d 675, 684 (N.D. Ohio 2005) (dismissing Title VII claims against employees named as defendants because "[i]n the Sixth Circuit, no Title VII claim can be made against an employee in her individual capacity"); *Holmes v. City of Cincinnati*, *supra*, 2016 WL 1625815 at *5 (granting individual defendants' motion for judgment on the pleadings and dismissing Title VII claim against them because "[i]t is beyond dispute that individual supervisors are not liable under Title VII"); *Robinson v. Rueggeberg*, *supra*, 2015 WL 4698432, at *2 (granting individual defendant's motion to dismiss Title VII and ADA claims because "[a]s a matter of law, neither Title VII nor the ADA allow for liability against an individual").

Because Drs. Hashmi and Andrabi as individuals are not "employers" who can be held liable under Title VII, Dr. Holland has not stated a plausible claim for relief against them.

---

[5] Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees…and any agent of such person." *Wathen*, 115 F.3d at 405. The statutory language "and any agent of such person" does not render an agent of an employer an "employer" under the statute; rather, it means only that an employer can be liable under Title VII for the conduct of its agents. *Id.* at 405-06.

3.  **Drs. Hashmi and Andrabi Were Not Dr. Holland's Supervisors or Managers and Cannot Be Sued and Held Individually Liable to Him Under O.R.C. Ch. 4112 (Count VI).**

Unlike Title VII, "individual managers and supervisors can be held jointly or severally liable with their employer for their own violations of O.R.C. §4112." *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) (*quoting Genaro v. Cent. Transp., Inc.*, 703 N.E.2d 782, 787-88 (Ohio 1999)). But "Ohio courts have refused to extend *Genaro* to non-supervisory employees." *Minnich v. Cooper Farms, Inc.*, 39 Fed. Appx. 289, 296 n.8 (6th Cir. 2002). No claim under O.R.C. Ch. 4112 can be made against individuals who are merely employees and not the plaintiff's manager or supervisor. *Id.*; *see also Edwards v. Ohio Institute of Cardiac Care*, 170 Ohio App.3d 619, 636 (2nd Dist. App. 2007) (observing that "a co-worker who engages in discriminatory conduct would not fall within the definition of an employer and, consequently, may not be held individually liable for his conduct").

Persons may qualify as managers or supervisors under O.R.C. Ch. 4112 if they have the authority to supervise, evaluate, discipline, promote, or terminate the plaintiff. *Fulst v. Thompson*, No. 2009 WL 4153222, at *4 (S.D. Ohio Nov. 20, 2009). *Cf. Vance v. Ball State Univ.*, 570 U.S. 421, 450, 453 (2013) ("[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim … such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Dr. Holland fails to state a valid claim against Dr. Andrabi and Dr. Hashmi under O.R.C. Ch. 4112 because he has not pleaded sufficient facts to render it plausible that either of them were his manager or supervisor – that is, that they had the authority to supervise, evaluate, discipline, promote, or terminate Dr. Holland. Rather, Dr. Holland alleges he reported to Dr. Phillips (Complaint, ¶24.e); Dr. Hashmi was nothing more than a fellow cardiovascular surgeon at St. Vincent (*Id.*, ¶¶7, 28); Dr. Hashmi and Dr. Holland initially agreed to share referrals (*Id.*, ¶29); when Dr. Holland complained

10

about Dr. Hashmi's alleged performance deficiencies, Dr. Hashmi stopped sharing with him (*Id.*, ¶¶39-41); and Dr. Holland could not get St. Vincent to make Dr. Hashmi share with him again because he had a close relationship with Dr. Andrabi and "management" was afraid to make Dr. Andrabi upset (*Id.*, ¶¶37-42).

In framing his complaint as such, Dr. Holland expressly distinguishes Dr. Hashmi and Dr. Andrabi from "management."[6] (Complaint, ¶42.) Meanwhile, Dr. Holland identifies various persons *other than* Dr. Andrabi and Dr. Hashmi as the Chief or Surgery and Chief of Cardiology at St. Vincent – that is, people who presumably would have played an actual supervisory role. (Complaint ¶36.) Most significantly, the individual who terminated St. Vincent's Service Agreement with the Toledo Clinic (which, according to Dr. Holland, resulted in his constructive discharge) was Tom Arquilla (not Dr. Andrabi or Dr. Hashmi); the individual who declined to continue Dr. Holland's medical director position at St. Anne's was its CEO (not Dr. Andrabi or Dr. Hashmi), and the individual who "pulled" the call agreement was Arquilla (not Dr. Andrabi or Dr. Hashmi). (Complaint, ¶¶82, 111, 112, 122.) And although Dr. Holland alleges Dr. Andrabi and Dr. Hashmi "designed a scheme" that resulted in his constructive termination from employment (Complaint ¶¶3-44, 74-75), such allegations do not demonstrate any *authority* on their part to take tangible employment actions against Dr. Holland. Per Dr. Holland, the only person with actual management authority over his status was Arquilla. (Complaint, ¶¶71, 82, 99, 111, 122.)

Dr. Holland's allegations do not render it plausible that Dr. Andrabi and Dr. Hashmi were his managers or supervisors. Dr. Holland thus fails to state a claim against Dr. Andrabi and Dr. Hashmi under O.R.C. Ch. 4112 upon which relief can be granted.

---

[6] Although Dr. Holland identifies Dr. Andrabi as Mercy's CEO and Senior Vice President (Complaint, ¶6), this says nothing about Dr. Andrabi's authority to actually supervise, evaluate, discipline, promote, or terminate Dr. Holland. Dr. Holland does not allege Dr. Andrabi had any such authority over him.

**D.**     **Dr. Holland Fails to State a Plausible Retaliation Claim Against Defendants Based on His Alleged Opposition Activity in Reporting Discrimination (Count II).**

Dr. Holland brings his retaliation claim "under all statutes and laws under which Plaintiff has brought claims in this Complaint." (Complaint, ¶152.) The reality is that he can assert a retaliation claim under only Title VII, O.R.C. Ch. 4112, and 42 U.S.C. §1981.

To establish unlawful retaliation, Dr. Holland must first establish a *prima facie* case of retaliation by showing, *inter alia*, that he engaged in protected activity. *Nicholson v. City of Clarksville, Tenn.*, 530 Fed. Appx. 434, 446 (6th Cir. 2013) (Title VII); *Laughlin v. City of Cleveland*, 102 F.Supp.3d 944, 949 (N.D. Ohio 2015), *aff'd*, 633 Fed. Appx. 312 (6th Cir. 2015) (Title VII and O.R.C. Ch. 4112). Retaliation claims brought under Section 1981 are subject to the same analysis as those based on Title VII. *Wade v. Knoxville Utilities Board*, 259 F3d 452, 464 (6th Cir. 2001).

Regarding the protected activity element, Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a). O.R.C. §4112.02(I) contains nearly identical language. Thus, both statutes contain an "opposition clause" and a "participation clause." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989); *Muir v. Chrysler LLC*, 563 F.Supp.2d 783, 789 (N.D. Ohio 2008); *Coch v. GEM Industrial, Inc.*, 6th Dist. App. No. L-04-1357, 2005-Ohio-3045, ¶29. Like Title VII and Ohio law, Section 1981 protects opposition activity. *Herrera*, 545 Fed. Appx. at 500.

Dr. Holland invokes both the opposition clause and the participation clause.[7] (Complaint, ¶153.) Regarding the opposition clause, he alleges that "Defendants' retaliation … was based on his:

---

[7] Dr. Holland's claim under participation clause, which is based on his filing of an EEOC charge, is not addressed herein. Dr. Holland also alleges retaliation based on his national origin and race. (Complaint, ¶153.) However, national origin and race are not bases for retaliation because they are categories of status and not categories of conduct. *See CBOCS W., Inc. v.*

…reporting of discrimination to Defendants[.]"(*Id.*) Dr. Holland's allegations, however, do not state a plausible claim under the opposition clause because he did not engage in protected opposition activity.

Dr. Holland never complained about race or national origin discrimination. (*See*, generally, Complaint.) Instead, he expressed concerns only about the quality of Dr. Hashmi's work and the alleged inequity of patient consults to him and Dr. Hashmi. (Complaint, ¶¶36, 45, 58, 59, 84 101-102, 115, 125.) Although Dr. Holland implies he was expressing a concern about the patient consults because Dr. Hashmi is Pakistani and Dr. Holland is not Pakistani, this falls short of a complaint of discrimination necessary to sustain a retaliation claim under the opposition clause.

The opposition clause does not protect all opposition activity. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989). The activity must amount to "opposition to an unlawful employment practice[.]" *Fox v. Eagle Distributing Co.*, 510 F.3d 587, 591 (6th Cir. 2007). *See also Brown v. O'Reilly Automotive Stores, Inc.*, 8th Dist. App. No. 102694, 2015-Ohio-5146, ¶32. Thus, "[a]n employee may not invoke the protections of the Act by making a vague charge of discrimination" because "a vague charge of discrimination … is insufficient to constitute opposition to an unlawful employment practice." *Booker*, at 1313. *See also Fox*, *supra*; *Coch v. GEM Industrial, Inc.*, *supra*, 2005-Ohio-3045, ¶32; *Robinson v. Quasar Energy Group, LLC*, 8th Dist. App. No. 101062, 2014-Ohio-4218, ¶20, *app. denied*, 143 Ohio St.3d 1418 (2015). "Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination." *Booker*, *Id. See also Fox*, *Id.*

---

*Humphries*, 553 U.S. 442, 460 (2008) (Thomas, J., dissenting) ("Retaliation is not discrimination based on race. When an individual is subjected to reprisal because he has complained about racial discrimination, the injury he suffers is not on account of his *race*; rather, it is the result of his *conduct*."). In other words, Dr. Holland's allusion to national origin and race in his retaliation claim are only a reiteration of his discrimination claims.

In *Booker*, an African-American employee who had been demoted because of a poor management style sent a letter to the employer's human resources department complaining that "this is a case of ethnocism, which should be investigated immediately." *Id.*, 879 F.2d at 1309. The Sixth Circuit held that even construing the employee's charge of "ethnocism" as a discrimination complaint, it was still too vague to constitute protected oppositional activity. *Id.*, at 1313-1314. *See also Willoughby v. Allstate Ins. Co.*, 104 Fed. Appx. 528 (6th Cir. 2004) (holding a demoted employee's letter to his employer claiming he had been treated differently because of his race with a citation to statistics about the racial makeup of the workforce and employees recently terminated was not protected activity under the opposition clause because the letter was "'contesting the correctness of a decision made by his employer' rather than asserting discrimination." *Id.*, 104 Fed. Appx. at 531 (quoting *Booker*); *Brown v. Guardsmark, LLC*, 2013 WL 3991911, *7 (S.D. Ohio Aug. 2, 2013) (holding an African-American employee's complaint about Caucasians being treated more favorably under the employer's policy prohibiting family members from working at the same location was not protected activity because "[w]hile it is true that Brown complained to her supervisor about another family working together at the same location, … Brown did not communicate to her supervisor that she felt this activity was discriminatory"); *Brown v. O'Reilly Automotive Stores*, *supra*, 2015-Ohio-5146, ¶36 (holding an employee's letter complaining that "there are a number of young guys with worse profit margin, but I am being told to either take a 60% pay cut or be fired" was not protected activity because the "letter did not specifically allege discriminatory employment practices"); *Jackson v. Champaign National Bank & Trust Co.*, 2000 WL 1376534, *7 (10th Dist. App. Sept. 26, 2000), *app. denied*, 91 Ohio St.3d 1448 (2001) (holding a female employee's letter challenging poor performance evaluation because she had exceeded male co-workers' sales levels and outperformed

them was not protected activity because the letter "merely makes vague references to gender, comparing her performance to that of the make lenders in her office").

If the employees' complaints at issue in the afore-cited cases did not constitute protected opposition activity, then certainly Dr. Holland's expressions of concern about Dr. Hashmi's work and the allegedly skewed consults did not rise to the level of protected opposition activity either. Thus, Dr. Holland did not engage in protected activity under the opposition clause.

**E.  Dr. Holland Fails to State a Plausible Title VII or O.R.C. Ch. 4112 Retaliation claim Against Drs. Andrabi and Hashmi (Count II).**

Dr. Holland filed two charges with the EEOC, one on February 23, 2017 and the other on March 28, 2017. (Complaint, ¶¶12, 97, 112[8]; *see* Exhibit A and Exhibit B attached hereto.) Dr. Holland's retaliation claim asserted against Drs. Hashmi and Andrabi suffers from the same fatal flaws that mandate the dismissal of his discrimination claims against these individual defendants.

Dr. Holland's Title VII retaliation claim cannot proceed against Drs. Hashmi and Andrabi for two separate reasons. First, he failed to identify them as respondents to either of his two EEOC charges. (*See* Exhibits A and B.) Instead, he asserted his retaliation claims against only "Mercy Health System" and "Mercy Health System – St. Vincent Medical Ctr." as respondents to both of his EEOC charges. Thus, for the reasons explained in Section III.C.1 above, Dr. Holland has not exhausted his administrative remedies regarding his retaliation claim against Drs. Hashmi and Andrabi.

Second, Dr. Holland's Title VII retaliation claim cannot proceed against Drs. Hashmi and Andrabi because they cannot be sued and held liable as "employers" under Title VII. *See* discussion in Part III.C.2, above.

Finally, as explained in Part III.C above, only supervisors and managers can be sued and held individually liable under O.R.C. Ch. 4112. Dr. Holland's O.R.C. Ch. 4112 retaliation claim against

---

[8] Paragraph 112 of the Complaint refers to "multiple Charges of Discrimination with the EEOC," but there are only two EEOC charges of which Defendants are aware.

Drs. Hashmi and Andrabi fails because he has not pleaded sufficient facts to render it plausible they were his managers or supervisors in that they had the authority to supervise, evaluate, discipline, promote, or terminate Dr. Holland. *See* discussion in Part III.C.3, above.

**F.      Dr. Holland Fails to State a Plausible Claim under Section 1981 (Count III).**

Per Dr. Holland, Defendants "took intentional and deliberate acts to interfere with [his] enforcement of his existing contract, and interfered with his ability to enter into a prospective contract," "intentionally caused [his] contract to be breached, and no longer continued, directly because he is white and not Pakistani," and "intentionally caused [him] not to receive another contract directly because he is white and not Pakistani." (Complaint, Count III, ¶¶162-164.) Presumably, the "contract" to which Dr. Holland refers is the St. Vincent-Toledo Clinic Service Agreement that St. Vincent terminated (Complaint, ¶82), and the "prospective contract" and "another contract" to which he refers is the call agreement St. Vincent allegedly declined to sign (*Id.*, ¶113). Dr. Holland's conclusory allegations do not state a viable claim under 42 U.S.C. §1981.

"Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001), *opinion supp. on denial of reh'g*, 266 F.3d 407 (6th Cir. 2001). Dr. Holland's §1981 race discrimination claim is based on his allegation that he is "white and not Pakistani." There are no supporting factual allegations explaining how his race (white) factored into Defendants' decisions regarding the Service Agreement or call agreement. On account of this, Dr. Holland's §1981 claim falls short of the *Iqbal/Twombly* pleading standard. This conclusion is compelled by the decision reached in *Sam Han v. University of Dayton*, 541 Fed. Appx. 622 (6th Cir. 2013), *cert. denied*, 134 S.Ct. 2699 (2014).

In *Sam Han*, the university of Dayton did not renew its contract with the plaintiff, and he sued under §1981 alleging the non-renewal constituted race discrimination. Affirming the district court's dismissal of this claim, the Sixth Circuit held the plaintiff's "complaint lists conclusory

allegations of discrimination and fails to provide, as required by *Iqbal* and *Twombly*, the 'sufficient factual matter' necessary to create an inference of discrimination." *Id.*, 541 Fed. Appx. at 626. Elaborating, the court observed:

> Certainly, Plaintiff pleads his own race…, and alleges that, as a result of his race…, he was given a bad evaluation by the PRT committee and then ultimately fired. However, Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race…factored into the University's decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment. The Court is therefore left to infer that the University's decision-making regarding Plaintiff's employment was discriminatory simply based on the fact that he is…Asian–American[.].

*Sam Han*, 541 Fed. Appx. at 626-627. As was the case in *Sam Han*, Dr. Holland's conclusory allegation that his status as a "white" person" and Defendants' actions regarding his contracts were motivated by this does not state a viable §1981 claim.

Dr. Holland attempts to bolster his claim by adding the Defendants were motivated by the fact he is "not Pakistani," *i.e.*, not of Pakistani national origin. (Complaint, ¶¶163-164.) Even construing this allegation to mean Defendants discriminated against him because of *his* national origin (as opposed to the fact he does not share *someone else's* national origin), "only claims of racial, as opposed to national origin, discrimination are cognizable under §1981." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987)); *El-Zabet v. Nissan North America, Inc.*, 211 Fed. Appx. 460, 462-463 (observing "it is legally impossible to state a claim for national origin discrimination under section 1981").

By alluding to the national origin of Drs. Andrabi and Hashmi, perhaps Dr. Holland is attempting to fit his §1981 claim within the parameters of the holding in *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). There, the Supreme Court held that "discrimination based on 'ancestry or ethnic characteristics' can constitute race-based discrimination under the statute. Under

this conception of race, one can state a cognizable §1981 claim if he can allege discrimination based on any number of ethnicities, including: German, Italian, Spanish, Russian, and 'Arab,' to name a few." *Amini*, 259 F.3d at 503 (citing *St. Francis College*, 481 U.S. at 611-613). To the extent Dr. Holland is attempting to state a §1981 claim in reliance on *St. Francis College*, his theory is fatally flawed because he has not alleged, even if bare bones fashion, that Defendants discriminated against him based on his ancestry or any ethnic characteristics he has that are associated with his place of origin. Indeed, Dr. Holland's Complaint neither identifies nor discusses either his place of origin, his ancestry, or his ethnic characteristics at all. Therefore, Dr. Holland has not satisfied the construction of "race" given to §1981 by the Court in *St. Francis*.

Simply put, discrimination against someone because he is not Pakistani is a far cry from discriminating against someone because of his race as manifested by his ancestry or ethnic characteristics. Discrimination of this nature is not alleged <u>*anywhere*</u> in Dr. Holland's Complaint. Dr. Holland's section 1981 claim should thus be dismissed. *Moniz v. Cox*, 512 Fed. Appx. 495, 500-501 (6th Cir. 2013), *cert. denied*, 571 U.S. 860 (2013) (affirming dismissal of section 1981 claim "because it does not contain specific factual allegations that [the defendant] intentionally discriminated against [the plaintiff] based on his race or ethnic characteristics"); *Savoy v. University of Akron*, 2009 WL 3417588, *2 (N.D. Ohio Oct. 16, 2009) (granting Rule 12(b)(6) motion to dismiss §1981 claim because "[a] close reading of the complaint reveals absolutely no allegations relating in any way to race, ancestry or ethnicity").

## G.    <u>Dr. Holland Fails to State a Plausible Claim of Tortious Interference with Contract (Count IV).</u>

Dr. Holland's tortious interference with contract claim is based solely on his employment contract with the Toledo Clinic. (Complaint ¶170.) It appears to be premised on the alternative theory

that only Toledo Clinic was his employer (a proposition with which Defendants agree) and

Defendants wrongfully procured a breach of that contract:

> 19.    Defendants designed the transaction so that, on paper, Dr. Holland was caused to enter into an employment agreement with the Toledo Clinic, Inc. ("Toledo Clinic"). Defendants employed Dr. Holland with Toledo Clinic simply functioning as a straw man/stand in.

*    *    *

> 170.    In the alternative to the above, Dr. Holland had a valid and existing contract with Toledo Clinic as more fully documented above and herein.

> 171.    Defendants were aware of the existence of the contract.

> 172.    Defendants intentionally procured the breach of the contract.

> 173.    Defendants lacked justification for the procurement of the breach of the contract.

> 174.    Dr. Holland has been harmed as a result of Defendants [sic] interference and the breach of his contract.

(Complaint ¶¶19, 170-74.)[9]

To establish a claim of tortious interference with a contract, a plaintiff must demonstrate the

following elements: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3)

the defendant's intentional procurement of the contract's breach; (4) lack of justification; and (5)

resulting damages. *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 Fed.

Appx. 717, 723 (6th Cir. 2017); *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858

(Ohio 1999). Importantly, the claim requires an actual breach of contract. *Wylie & Sons*, 696 Fed.

Appx. at 724.

Dr. Holland's Complaint contains no explanation of how Dr. Holland's employment

agreement with the Toledo Clinic was breached. Indeed, he did not even bother to attach a copy of it

to the Complaint, leaving the Defendants and the Court completely in the dark about which of its

provisions may have been breached by the Toledo Clinic. Dr. Holland likewise has not explained

---

[9] Dr. Holland's employment agreement with the Toledo Clinic, on which his tortious interference with contract claim is based, is distinct from the service agreement between St. Vincent and the Toledo Clinic. (*Id.*, ¶21.)

how the Defendants procured the alleged breach, and how Dr. Holland has been financially harmed by it. Instead, after alluding to his Toledo Clinic employment agreement in paragraph 19 of the Complaint, Dr. Holland simply leaps all the way to the conclusory allegations that "Defendants intentionally procured the breach of the contract" and that he "has been harmed as a result of Defendants [sic] interference and the breach of his contract." (Complaint, ¶¶172, 174.)

Absent any factual allegations demonstrating an actual breach of Dr. Holland's employment agreement with the Toledo Clinic, explaining how the Defendants caused the alleged breach, and any damages caused thereby, Dr. Holland's claim for tortious interference with contract fails to state a plausible claim for relief upon which relief can be granted. Dr. Holland's mere formulaic recitation of the elements of a tortious interference with contract claim are not sufficient to state a plausible claim for relief upon which relief can be granted. Dr. Holland must allege sufficient *facts* to state a plausible claim for relief. *Iqbal*, 556 U.S. at 696. He has failed to do so.

**H.    Dr. Holland Fails to State a Plausible Claim of Intentional Interference with Business Relations (Count V).**

Dr. Holland's claim of "intentional interference with prospective business relations" is nothing more than a regurgitation of his tortious interference with contract claim, again based on the notion that the Toledo Clinic was his employer:

> 179.    In the alternative to the above, Dr. Holland had a business relationship with Toledo Clinic.
>
> 180.    Defendants had actual knowledge of that business relationship.
>
> 181.    Defendants intentionally interfered with that relationship, causing a breach and/or termination of that relationship, and preventing it from being properly continued into the future.
>
> 182.    Defendants [sic] interference was improper and without any justification or privilege.
>
> 183.    Dr. Holland has been harmed as a result of Defendants [sic] interference and the caused breach of his business relationship.

(Complaint ¶¶179-83.)

The elements of this claim are similar to those applicable to tortious interference with contract claims. "Under Ohio law, a claim for tortious interference with business relations exists when: (1) a business relationship or contract existed; (2) the wrongdoer had knowledge of the relationship or contract; (3) the wrongdoer intentionally and improperly acted to 'prevent a contract formation, procure a contractual breach, or terminate a business relationship'; (4) the wrongdoer has no privilege to act in this manner; and (5) damages resulted from wrongdoer's conduct." *Office Depot, Inc. v. Impact Office Prod., LLC*, 821 F. Supp. 2d 912, 924 (N.D. Ohio 2011).

The same defects in Dr. Holland's tortious interference with contract claim exist here. There are no allegations explaining how Defendants interfered with or caused the alleged breach of Dr. Holland's Toledo Clinic employment agreement and how he has been monetarily harmed by the alleged interference or breach. Dr. Holland therefore fails to state a plausible claim for tortious interference with business relations upon which relief can be granted.

## I.    Dr. Holland Fails to State a Plausible Claim under Ohio's Whistleblower Statute, O.R.C. § 4113.52 (Count VII).

Ohio's whistleblower statute, O.R.C. §4113.52, prohibits an employer from retaliating against an employee for making a report authorized by the statute. *Keehan v. Certech, Inc.*, 2015 WL 8483179, at *3 (N.D. Ohio Dec. 10, 2015). Dr. Holland fails to state a plausible claim against Defendants under this statute because his Complaint: (1) was filed after the statutory limitations period expired; and (2) demonstrates that he failed to comply with the strict and necessary procedural requirements of the statute before bringing his claim. In addition, Holland fails to state a plausible claim against Dr. Andrabi and Dr. Hashmi because whistleblower claims cannot be asserted against individuals.

1.      **Dr. Holland's Whistleblower claim is Barred By the Applicable Statute of Limitations.**

An employee who believes he has been aggrieved by a violation of O.R.C. §4113.52 "may bring a civil action … within 180 days after the date the disciplinary or retaliatory action was taken[.]" O.R.C. §4113.52(D); *Aronhalt v. Castle*, 10th Dist. Franklin No. 12AP-196, 2012-Ohio-5666, ¶29, *app. denied*, 135 Ohio St.3d 1414 (2013) (*citing* O.R.C. 4113.52(D)). Thus, Dr. Holland was required to commence an action asserting his whistleblower claim, at the very latest, within 180 days after the last retaliatory adverse employment action he alleges was taken against him.

Dr. Holland alleges that he was either "constructively discharged" or "terminated" from his alleged employment. (Complaint, ¶17.) Specifically, he alleges he was constructively discharged, effective February 28, 2017, when his Service Agreement was not renewed:

> 82.     [O]n November 28, 2016, Arquilla wrote a letter to the Toledo Clinic informing them of their intent to terminate his Service Agreement, without cause, effective February 28, 2017.
>
> 83.     Such action … *amounted to a constructive discharge* by dramatically and radically cutting Dr. Holland's pay.

(Complaint ¶¶82-83 [emphasis added]). Dr. Holland then alleges he was terminated on March 17, 2017, when he was allegedly advised that Arquilla refused to sign the call agreement that would have let him render medical service at the hospital without the Toledo Clinic Service Agreement, and that his medical director position was not being continued:

> 109.    On March 17, 2017, Holland was asked to meet with the CEO of St. Anne's hospital, with regard to the call agreement and a medical director position that he held.
>
> *       *       *
>
> 111.    Indeed, Dr. Holland was advised that Arquilla refused to sign the call agreement specifically because Dr. Holland had filed a charge of discrimination against Defendants.

22

112.    Additionally during that meeting, St. Anne's CEO advised Dr. Holland that his medical director position was not being continued.

113.    Resultantly, *<u>although St. Anne's CEO refused to use the word "termination", that is exactly what occurred</u>* – Dr. Holland's call agreement was not signed, and therefore, he was terminated from providing call coverage as well as being terminated from his medical director position.

(Complaint ¶¶109, 111-13 [emphasis added]). Dr. Holland then alleges that on May 17, 2017, the call agreement was "pulled" at Arquilla's direction. (*Id.*, ¶¶119, 122.) In any event, Dr. Holland did not file his complaint in this case until March 2, 2018 – well beyond the 180-day limitation period for his whistleblower claim, regardless of which termination date is used. Accordingly, Count VII of his complaint should be dismissed as untimely.

To avert the statute of limitations bar to his claim, Dr. Holland later alleges he "tendered his resignation" on December 30, 2017.[10] (Complaint ¶140.) However, an employee cannot "resign" from employment after he has already been terminated from employment. *Keesecker v. Midland Cty. Educ. Serv. Agency*, 2006 WL 680864, at *8 (E.D. Mich. Mar. 16, 2006) ("[S]ince the plaintiff was terminated, she could not have resigned or quit"); *Sharockman v. Lifespan of Minnesota, Inc.*, 2016 WL 281267, at *5 (Minn. Ct. App. Jan. 25, 2016) ("Sharockman could not have resigned his employment … if he previously had been involuntarily terminated."); *In re Anderson*, 108 A.D.3d 900, 900 (N.Y. Ct. App. 2013) ("Because the record establishes that claimant's employment was terminated by the September 3, 2010 letter, substantial evidence supports the determination of the Unemployment Insurance Appeal Board that claimant could not have subsequently resigned on September 15, 2010.").

---

[10] Quite tellingly, the drafts of Dr. Holland's Complaint that his lawyer sent to Defendants' counsel in 2017 do not include any allegation that Dr. Holland resigned from his employment on December 30, 2017 or at any other time. Obviously, Dr. Holland's lawyer threw this allegation in right before filing the Complaint because he recognized the statute of limitations bar to the whistleblower claim.

2. **Dr. Holland Fails to State a Plausible Whistleblower Claim Because he Failed to Strictly Adhere to the Procedural Requirements of the Statute.**

"[I]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52.'" *Herrington v. DaimlerChrysler Corp.*, 262 F. Supp. 2d 861, 865 (N.D. Ohio 2003), *aff'd*, 125 Fed. Appx. 23 (6th Cir. 2004) (*quoting Contreras v. Ferro Corp.*, 73 Ohio 652 N.E.2d 940 (Ohio 1995)). "'Failure to do so prevents the employee from claiming the protections embodied in the statute.'" *Id.* (quoting *Contreras*). "The whistleblower statute provides that 'the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and *subsequently* *shall* file with *that* supervisor or officer a written report that provides sufficient detail to identify and describe the violation.'" *Id.* (quoting Ohio Rev. Code § 4113.52(A)(1)(a)) (emphasis added).

Dr. Holland's whistleblower claim is based on his complaints of Dr. Hashmi's alleged "sub-par surgical practice." (Complaint, ¶¶195-196.) Dr. Holland alleges he first "raised concerns" about the issue to St. Vincent's "Chief of Surgery," "Chief of Cardiology" (apparently Dr. Ameer Kabour), and Dr. James Burdine in July 2013. (Complaint, ¶¶35-37.) He then alleges he met with St. Vincent CEO Tom Arquilla (as well as Toledo Clinic CEO Scott Porterfield) in January 2014 to discuss his "quality concerns." (Complaint ¶45).

Thereafter, "[o]n July 27, 2014, Dr. Holland sent an email to the Chief of Cardiology at St. Anne's and board member of Toledo [Clinic]" in which he "expressed concerns about two recent cases of Hashmi's where his patients were required to return to the operating room following routine procedures." (Complaint, ¶¶58-59.) Over three years later, on February 28, 2017, "Dr. Holland also placed Andrabi on direct notice pursuant Ohio's Whistleblower Statute, ORC Ann. 4113(A)(1)(a) [sic]" and then provided similar notice to interim CEO Jeff Dempsey on July 11, 2017. (Complaint,

24

¶¶98, 101-102, 125.) Presumably, by characterizing these notices to Dr. Andrabi and Dempsey as "direct," they were in writing.[11]

This chain of events demonstrates Dr. Holland failed to strictly follow the dictates of the whistleblower statute. Dr. Holland first orally reported his concerns to St. Vincent's "Chief of Surgery," St. Vincent's "Chief of Cardiology," Dr. Burdine, and Arquilla between July of 2013 and January of 2014. He then reported his concerns in writing to other individuals (St. Anne's Chief of Cardiology in July of 2014, and Dr. Andrabi and Dempsey in 2017). But the whistleblower statute requires that the written report(s) be filed with the _same_ supervisor or responsible officer to whom the oral reports were directed: "… the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with _that_ supervisor or officer a written report…" O.R.C. §4113.52(A)(1)(a). Because Dr. Holland's written reports were not made to any of the individuals to whom he had expressed his concerns orally (St. Vincent's Chief of Surgery, St. Vincent's Chief of Cardiology, Dr. Burdine and Arquilla), he failed to strictly comply with the whistleblower statute's procedural requirements.

This conclusion is compelled by the result reached in _Haney v. Chrysler Corp._, 121 Ohio App.3d 137 (6th Dist. App. 1997). There, the plaintiff orally notified his immediate supervisor, the supervisor of the work area, the union steward, and someone involved in plant safety of potential workplace safety violations. He followed this up with written reports to someone else, the senior staff manager of union relations and assembly operations (Carmichael). The court held the plaintiff's whistleblower claim failed because his written reports were not made to the same individuals to whom he made the oral reports:

---

[11] St. Vincent is aware Dr. Holland's lawyer sent letters to Dr. Andrabi and Dempsey on Feb, 28, 2017 and July 11, 2017, respectively, although Dr. Holland did not attach these letters to his Complaint. For purposes of this motion, Defendants will assume Dr. Holland's lawyer's letters are the "direct notices" to which he refers in his Complaint.

First, appellant failed to comply with the statute because his written reports were not made to the same individual to whom he made the oral reports. R.C. 4113.52(A)(1)(a) specifically states that the subsequent filing of the written report should be filed with *that* supervisor or officer who received the oral notifications. Appellant made several oral notifications of alleged safety violations to his supervisor, the supervisor of his work area, the union steward, and a member of the plant safety personnel, but never to Carmichael. …

*Haney*, 121 Ohio App.3d at 139 (emphasis in original). *See also Zeman v. Goodrich Corp.*, 2005 WL 1668498, *20 (N.D. Ohio July 16, 2005) ("Moreover, as the clear language of the statute indicates, an employee must file his written report of an alleged violation with the *same* supervisor or officer to whom he made his oral report" [emphasis in original]).

Because Dr. Holland did not file his alleged written reports with any of the individuals to whom he had orally expressed his concerns, he failed to strictly comply with the whistleblower statute, and therefore has failed to state a claim upon which relief can be granted thereunder.

### 3. Dr. Holland Fails to State a Plausible Ohio Whistleblower Claim Against Dr. Andrabi and Dr. Hashmi Because They Cannot Be Sued and Held Liable Under the Whistleblower Statute.

Similar to Title VII, O.R.C. §4113.52 does not allow for individuals to be sued and held liable because they do not fall within the statute's definition of "employer." *Keehan v. Korenowski*, 9th Dist. App. No. 28221, 2017-Ohio-7050, ¶¶11-15 (affirming trial court's Rule 12(b)(6) dismissal of O.R.C. §4113.52 claim against individual defendants); *Armstrong v. Trans-Service Logistics, Inc.*, 5th Dist. App. No. 04CA015, 2005-Ohio-2723, ¶¶31-43; *Keehan v. Certech, Inc.*, 2015 WL 8483179, *4 (N.D. Ohio Dec. 10, 2015). Consequently, Dr. Holland fails to state an Ohio whistleblower claim against Dr. Andrabi and Dr. Hashmi upon which relief can be granted.

### J. Dr. Holland Fails to State a Plausible Claim for Intentional Infliction of Emotional Distress (Count VIII).

In order to establish a claim for intentional infliction of emotional distress, Dr. Holland must establish that (1) Defendants intended to inflict serious emotional distress upon him or knew or

26

should have known their actions would do so; (2) Defendants' conduct was so "extreme and outrageous" as to go beyond all possible bounds of decency and was such that it is to be considered as utterly intolerable in a civilized community; (3) Defendants' actions were the proximate cause of Dr. Holland's alleged psychological injury; and (4) Dr. Holland's mental anguish was both severe and debilitating such that no reasonable person could be expected to endure it. *Cokely v. Smith*, 2nd Dist. App. No. 21802, 2007-Ohio-5650, ¶12. Dr. Holland's allegations supporting his intentional infliction of emotional distress claim fall short of the third and fourth elements of this claim.

### 1. **Dr. Holland Was Not Subjected to "Extreme and Outrageous" Conduct.**

The requirement that the conduct underlying an intentional infliction of emotional distress claim be "extreme and outrageous" limits the availability of this claim to truly unusual and egregious circumstances:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. …

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983), *abrogated on other grounds*, *Welling v. Weinfeld*, 113 Ohio St.3d 464 (2007) (quoting Restatement of the Law 2nd, Torts (1965), §46(1), Comment d, at 73); *Boyd v. Archdiocese of Cincinnati*, 2nd Dist. App. No. 25950, 2015-Ohio-1394, ¶51.

Thus, a claim for intentional infliction of emotional distress requires a showing of conduct *beyond* that which is tortious, intentionally harmful, malicious or criminal. "Ohio courts' definition of 'Outrageous!' is exceedingly narrow," and so "Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship." *Culler v. Exal Corp.*, 193 F.Supp.3d 850, 852 (N.D. Ohio 2016). To be actionable, the alleged conduct must be *worse* than intentionally tortious and intentionally injurious, *worse* than malicious, and *worse* than criminal in nature. *Yeager*,

27

6 Ohio St.3d at 374-375 ("*It has not been enough* that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort" [emphasis added]). "Whether conduct is extreme and outrageous is a question of law for the court." *Moore v. Impact Community Action*, 10th Dist. App. No. 12AP-1030, 2013-Ohio-3215, ¶15.

Here, as a matter of law, Dr. Holland's allegations to not rise to the requisite level of extreme and outrageous behavior on Defendants' part. He alleges he was treated unfairly and constructively discharged because Drs. Hashmi and Andrabi are Pakistani and Dr. Holland is not Pakistani. He has alleged he was retaliated against because he filed an EEOC charge and complained about the quality of Dr. Hashmi's work and the patient consults. This alleged conduct is not even criminal, let alone worse than criminal; nor is it worse than intentionally injurious or worse than malicious. In *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134 (1997), *cert. denied*, 118 S.Ct. 586 (1997), the Ohio Supreme Court held that conduct worse than that alleged by Dr. Holland did not meet the *Yeager* standard. *Id.*, at 135-136, 163 (physically threatening plaintiff, warning co-workers not to associate with him, harassing him by secretly videotaping him, placing numerous false write-ups in his file over several days, and ultimately discharging him, all in retaliation for reporting safety hazards, *held* not to constitute extreme and outrageous conduct necessary to sustain an intentional infliction of emotional distress claim).

Dr. Holland attempts to beef up his claim by alleging the "extreme and outrageous conduct included causing Dr. Holland to have helplessly witness" harm to third parties. (Complaint, ¶213.) However, "[g]enerally, this tort is asserted by the victim of the defendant's conduct, not a bystander." *David v. Matter*, 6th Dist. App. No. S-17-006, 2017-Ohio-7351, ¶16. In this regard, in *Arnold v.*

28

*Wilder*, 657 F.3d 353 (6th Cir. 2011), the plaintiff attempted to assert a Kentucky law intentional infliction of emotional distress claim based on witnessing physical force perpetrated against a third party by the police. In determining this claim to be without merit, the court reasoned that because Kentucky had not adopted Restatement (Second) of Torts §46(2), which subjects an actor to liability where the conduct is directed at a third person, the plaintiff could not prevail on her claim. *Id*., 657 F.3d at 368. The court observed that Kentucky has only adopted Restatement (Second) of Torts §46(1), which requires that the tortious conduct be directed at the plaintiff in order to sustain an intentional infliction of emotional distress claim and does not allow for liability for conduct directed at third parties. *Id*. Ohio, likewise, has adopted only §46(1), but not §46(2), of the Restatement (Second) of Torts.[12] *Arnold* applies directly here.

Dr. Holland, moreover, has not asserted that Defendants intended to cause him serious emotional distress by allegedly allowing third parties to be harmed, *i.e.* that injuring Dr. Holland emotionally was the purpose of allowing the harm to third parties; rather, he simply alleges he witnessed the harm and alleges, in conclusory fashion only, that Defendants intended to cause him emotional distress. This is not enough to sustain his claim. *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 870-871 (N.D. Ohio 2013) (granting motion to dismiss intentional infliction of emotional distress claim based on conclusory allegation that the defendant intended to harm the plaintiff).

2. **Dr. Holland's Alleged Mental Anguish is Not Sufficiently "Severe and Debilitating."**

Even if Dr. Holland had alleged the level of extreme and outrageous misconduct that is necessary to sustain his intentional infliction of emotional distress claim, this tort also requires an emotional injury that is both severe and debilitating such that no reasonable person could be expected to endure it. *Paugh v. Hanks*, 6 Ohio St.3d 72 (1983) (3rd syllabus) (construing the emotional distress

---

[12] Even if Ohio adopted §46(2) of the Restatement, it applies only to intentional infliction of emotional distress claims asserted by a member of the family of the person who was harmed. *Arnold*, at 368. Dr. Holland has not alleged he is family member of the third parties who were allegedly harmed.

element in the context of a negligent infliction of emotional distress claim); *Cokely v. Smith*, 2nd Dist. App. No. 21802, 2007-Ohio-5650, ¶16. This tort involves only very dire conditions: "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Paugh v. Hanks*, 6 Ohio St.3d at 78; *Cokely v. Smith*, ¶17. The "initial determination as to the severity of the emotional injury is a question of law for the trial court." *McCarthy v. City of Cleveland Heights*, 65 Ohio App.3d 216, 218 (8th Dist. 1989). Thus, "a court may decide whether [the plaintiff] has stated a cause of action by ruling on whether the emotional distress alleged is serious as a matter of law." *Paugh*, 6 Ohio St.3d at 78.

In support of this element of his claim, Dr. Holland makes the bald, conclusory allegation that he "suffered serious emotional distress." (Complaint, ¶214.) This falls far short of what is necessary to adequately allege this element of Dr. Holland's claim. *Jackson v. City of Columbus*, 67 F.Supp.2d 839, 868 (S.D. Ohio 1998), *affirmed*, 194 F.3d 737 (6th Cir. 1999), *abrogated on other grounds*, 534 U.S. 506 (2002) (R. 12(b)(6) motion granted where plaintiff alleged to have suffered "extreme and severe emotional distress and outrage"); *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 710 (S.D. Ohio 2014); (R. 12(b)(6) motion granted where plaintiff alleged to have suffered "mental anguish"); *Roe v. Franklin Cty.*, 109 Ohio App.2d 772 (10th Dist. 1996), *app. denied*, 77 Ohio St.3d 1415 (1996)(R. 12(b)(6) motion granted where the plaintiffs alleged "humiliation, embarrassment, and physical and mental suffering"); *Sparks v. University Hospitals Health Systems, Inc.*, 2014 WL 792162, *2 (N.D. Ohio Feb. 25, 2014) (R. 12(b)(6) motion granted because the plaintiff "does not allege facts supporting her bare assertion that she suffered 'serious emotional distress' as a result of her discharge.")

As in *Jackson*, *Day*, *Roe* and *Sparks*, Dr. Holland has not alleged he has suffered the requisite severe and debilitating injury that is necessary to sustain his intentional infliction of emotional

distress claim. Consequently, this claim should be dismissed for failure to sufficiently allege a redressable injury for this tort.

### IV.    CONCLUSION

For the foregoing reasons, judgment on the pleadings in Defendants' favor should be granted on the following claims asserted in Dr. Holland's Complaint:

1. All claims asserted against Dr. Andrabi and Dr. Hashmi; and

2. All claims asserted against Mercy Health and Mercy Health-St. Vincent Medical Center, LLC except for the Title VII and O.R.C. Ch. 4112 national origin discrimination claim and retaliation claim premised on Dr. Holland's EEOC charge, which Defendants strenuously contend lack merit but recognize may require development of the record before being dismissed.

Respectfully submitted,

*/s/ Thomas J. Wiencek*
Thomas J. Wiencek (0031465)
MERCY HEALTH
388 South Main Street
Suite 500
Akron, Ohio 44311-4407
Phone: (513) 639-0196
Fax: (330) 253-8601
tjwiencek@mercy.com

R. Scot Harvey (0046910)
BROUSE MCDOWELL, LPA
388 South Main Street
Suite 500
Akron, Ohio 44311
Phone: (330) 535-5711
Fax: (330) 253-8601
sharvey@brouse.com

*Counsel for Defendants*

1023017.4