EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

Ohio Civil Rights Commission _____ and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Fred W. Holland, II | 419-304-7595 | 7/9/57 |

Street Address: 3405 Chestnut Hill Rd
City, State and ZIP Code: Toledo, OH 43606

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Mercy Health System | +50 | 513-952-5000 |

Street Address: 1701 Mercy Health Place
City, State and ZIP Code: Cinncinnati, OH 45237

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Mercy Health System - St. Vincent Medical Ctr. | +50 | 888-987-6372 |

Street Address: 2213 Cherry Street
City, State and ZIP Code: Toledo, OH 43608

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — Latest
11/28/16 through Present
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I, Fred W. Holland II, M.D., am 59 years old and I am currently employed as a staff cardiothoracic surgeon at the Toledo Clinic, Inc. ("Toledo Clinic") located at 4235 Secor Road, Toledo, OH 43623. Toledo is a healthcare facility that employs approximately two hundred fifty (250) physicians who are licensed to practice in Ohio, including seven (7) who are licensed and Board certified in cardiovascular medicine."

Although my practice group is maintained through Toledo Clinic, Mercy Health ("Mercy"), a health care system the oversees and operates twenty three (23) hospitals in both Ohio and Kentucky (and is the fourth largest employer in Ohio), is also my employer.

Imran Andrabi, M.D., ("Andrabi") is the CEO and Senior Vice President of Mercy Health System. Andrabi is a Pakistani male.

As an employee of Mercy, I have staff privileges at several of Mercy's hospitals, including St. Vincent Hospital, St. Anne Hospital and St. Charles Hospital. However, most of my work is performed at St. Vincent's and St. Anne's.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - When necessary for State or Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

2/23/17
Date — Charging Party Signature

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒☒ EEOC | |

Ohio Civil Rights Commission and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In December 2012, Mercy began to employ me, but did so through its subsidiary entity, St. Vincent Hospital. St. Vincent Hospital and Toledo entered into a 5-year services agreement whereby Toledo was to provide St. Vincent with a qualified cardiovascular surgeon (in this case, me) to perform services for Mercy in exchange for referrals. As part of the agreement, St. Vincent also agreed to subsidize my compensation, i.e., pay Toledo for my services according to the amounts set forth in the contract, estimated between $712,000 to $730,000 per year. Thus, even though my paychecks come from Toledo, my office was located at St. Vincent and my salary was being paid for by St. Vincent. Additionally, it was Mercy that obtained the exclusive right to bill and collect fees for my services. My patient referrals came through Mercy, and even though the contract did not call for it, I performed work at other Mercy hospitals.

I officially began working for Mercy at St. Vincent in March 2013. At the start of my employment there, I was one of three cardiovascular surgeons who worked at St. Vincent, along with Dr. Fayyaz Hashmi ("Hashmi"), a Pakistani male, and Dr. James Burdine ("Burdine"), a white male (Burdine eventually died of bone cancer and would be replaced by Dr. Christopher Phillips sometime in summer 2015). Upon my arrival at St. Vincent, Hashmi and I agreed that any patient consults that came through the hospital would be split evenly between the two of us. Burdine at the time was building and focusing his practice on lungs and thus Hashmi and I split heart-related patients. Throughout my first few months at St. Vincent, consults were evenly split as we each worked about 150 to 170 cases within my first year. Things were generally amicable between Hashmi and I as well. Upon entering the practice, I did not know of Hashmi's significant history of committing medical malpractice.

However, in July 2013 I learned that Hashmi was responsible for two consecutive patient deaths that underwent identical procedures within a 48 hour time period. I raised my concerns about these deaths to Dr. Greg Casper, who was Chief of Surgery at the time,

Dr. Kabour, who was Chief of Cardiology at the time, and Burdine. Although I raised my concerns, no one wanted to challenge Hashmi and/or Andrabi. Because Hashmi was of Pakistani descent, as was Andrabi, Hashmi was untouchable at Mercy.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 2/23/17 Date  *[signature]* Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |
| Ohio Civil Rights Commission | | and EEOC |
| State or local Agency, if any | | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Shortly after I raised my concerns about these deaths, I began to notice that patient consults were no longer being evenly split between Hashmi and I. I soon learned that Hashmi directed Elizabeth Sheroian ("Sheroian"), the office manager for cardiovascular surgery at St. Vincent, that when consults came in, she was to give them directly to Hashmi rather than page them out of the surgeon on call, as was the usual policy and practice. In an effort to remedy the situation created by Hashmi, on October 8, 2013 Burdine sent an email around to the cardiologist group, including Hashmi and I, that explained which doctor should be contacted when consults are called into the office. Though his email was intended to correct the problem of Hashmi taking over almost all of the consults, Hashmi continued to violate our agreement and direct almost all patient consults directly to him. Hashmi did so, without fear of reprisal from management, because of his close relationship with Andrabi. Moreover, Hashmi and his brother Raza Hasmi (a cardiologist that controls a significant amount of cardiology services at Mercy) have also conspired to cause business to be provided to Hashmi to the exclusion of superior physicians.

Then, on Jan 21, 2014, I met with Tom Arquila ("Aqruila"), the CEO of St. Vincent, and Scott Porterfield ("Porterfield"), the CEO of Toledo, to address nursing issues and my consult/referral issues with Hashmi. Arquila reported / reports directly to Andrabi. At the conclusion of the meeting, Arquila told me that if I am unhappy, "they" would be would be happy to serve as a reference for me. I took this as a warning – either to quit complaining or else I would find myself in need of new employment. As for the consult issue, nothing was done to improve the situation and Hashmi continued to control patient consults as he saw fit.

Not only was the issue not corrected, but also another patient died after Hashmi improperly performed the same surgery yet again. This patient death was avoidable had the agenda been patient safety as opposed to discrimination. Moreover, I also began to suffer further mistreatment at the hands of Hashmi, Andrabi and Mercy. For example, Mercy was recruiting physician assistants and nurses. Sheroian intentionally chose not to keep me informed on these matters and went so far as to make sure that I was not included in any meetings pertaining to these recruitments. Additionally, Hashmi refused to speak with me regarding "sign out" which is a procedure where physicians who will be absent for the weekend or while on holiday discuss the care of the house patients with the covering physicians. This action not only adversely affected me but it also adversely affected the patients under Mercy's and/or St. Vincent's care.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures

I declare under penalty of perjury that the above is true and correct.

2/23/17
Date       Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

Ohio Civil Rights Commission and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On February 19, 2014, I received an email from Porterfield where he acknowledged how poorly I had been treated by Mercy and its physicians. While Porterfield apologized for the trouble but took no action to remedy my mistreatment at Mercy. I believe that he did not take any action because of the direction of Hashmi and Andrabi and/or fear of retaliation from them had he done so.

In about July or August 2014, St. Anne's began to offer cardiovascular services. Shortly thereafter I was appointed Chief Cardiothoracic Surgeon at Anne's. Thus, despite the fact that my services agreement was initially with St. Vincent only, as an employee of Mercy, I began performing work at St. Anne's in addition to the work I was performing at St. Vincent. Hashmi was angered when his attempts to gain the position I obtained failed.

On July 27, 2014, I sent an email to Ahed Nahhas, the Chief of Cardiology at St Anne's and board member of Toledo, whereby I complained about the politics and my continued mistreatment by Mercy at St. Vincent. I also complained about Hashmi's encouragement of my mistreatment and expressed my concerns about two recent cases of Hashmi's where his patients were required to return to the operating room following routine procedures. I complained that these cases were being ignored. However, as before, nothing was done to improve patient care because of Andrabi and Hashmi's relationship.

Shortly after I was appointed Chief at St. Anne's, the 2014 Society of Thoracic Surgeons (STS) surgeon data was sent to Hashmi, Burdine and I. Hashmi's statistics were extremely alarming. For example, in 2014, Hashmi had 6 deaths in 137 of his cases compared to my 0 deaths in 36 cases. During the first half of 2015, Hashmi had 2 deaths in 90 of his cases while I again I had 0 for my cases. The 2013 STS data illustrated that Hashmi's patient death rates are 6 to 7 times larger than my death rates and over 3 times (300%) greater than the national average. Yet for years Mercy through Andrabi has continued to protect Hashmi and conceal or ignore these data reports. Even worse, Hashmi continued to receive a majority of the cardiothoracic cases that came through Mercy and/or St. Vincent Hospital while I was continually being "frozen out" despite the STS data reports. In other words, despite objective data, patient care and safety were taking a back seat to the relationship between Andrabi and Hashmi.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2/23/17
Date          *Charging Party Signature*

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |
| Ohio Civil Rights Commission | | and EEOC |
| *State or local Agency, if any* | | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On May 7, 2015, I received an email from Porterfield. In that email, he indicated that he spoke with Aquila and that Arquila intended to renew my contract upon its expiration in 2017. I presume my contract was going to be renewed because of my excellent statistics and quality of work despite my continued mistreatment and lack of patient consults. I continued to work at St. Vincent's and St Anne's to the best of my ability, no longer complaining about Hashmi for fear of retaliation, i.e., being terminated by Mercy and Andrabi.

In the fall of 2015, Hashmi complained about me to Andrabi. Andrabi is not Hashmi's direct report. In fact, there are several people purportedly in the direct chain of command at Mercy between Hashmi and Andrabi, further establishing the relationship between the two and their joint and mutual action taken against me. Another example, in November 2014 Hashmi and I got into a disagreement via email as to how Sheroian is to reach me at the hospital. Hashmi then decided to "cc" Andrabi to reach out to his ally and in an attempt to portray me as the villain. Again, Hashmi should not be reporting any such issues directly to Andrabi, but he does and is permitted to so.

In July or August 2016, Hashmi brought in Dr. Sulaiman Hasan, a Pakistani cardiothoracic surgeon (who has not practiced in the US for a number of years) for a tour of the hospital. I was suspicious of this and took it as an immediate sign that Mercy and Hashmi were attempting to replace me with Hasan. Indeed, that is what occurred. In September 2016, Hasan was brought in for an interview. Despite my opposition, Mercy offered Hasan a contract.

Rather than provide me with patients and surgeries in order to justify my contract and ongoing employment, Mercy chose to offer a contract to Hasan. Mercy also continued to let Hashmi control the assignment of referrals (he continued to give a majority of them to himself) despite his incomprehensible mortality statistics over the past three years.

After essentially offering my contract to another Pakistani physician that has not practiced in the United States for the past several years, on November 28, 2016, Arquila wrote a letter to the Toledo Clinic informing them of their intent to terminate my Service Agreement, without cause, effective February 28, 2017. Such action, as ultimately conspired to and orchestrated by Andrabi and Hashmi, amounts to a constructive discharge.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2/23/17
Date    Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA  ☒ EEOC | |
| Ohio Civil Rights Commission | | and EEOC |
| State or local Agency, if any | | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

By way of further example, since December 1, 2016 Hashmi has had 5 of 11 patients return to the operating room due to internal bleeding. It is most likely that some of those patients will die. Hashmi's complication rate is more than should occur for entire year, let alone a few months.

On December 20, 2016, I had three independent conversations with two different physicians and a manager. Each agreed that the referral issue was unfair. However, because Andrabi controlled the system, there was nothing that they or I could do about it.

On January 25, 2017, I met with Mercy administration to discuss terms of an agreement with Mercy that would enable me to continue working at St. Vincent's and St. Anne's. However, Mercy requested to reduce my income from roughly $730,000.00 per year to $120,000.00 per year. Given that my medical malpractice insurance costs between $40,000 to $60,000 my net revenue would likely be less than $100,000 per year. No cardiac surgeon in the United States would work for so little. As such, I believe that not only is the offer Mercy's sham attempt to claim that they are offering me new employment, but I also believe that what has occurred here (including the purported "offer") amounts to a constructive discharge.

I believe I was discriminated against because of my race and my national origin in violation of Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act of 1959. Such discrimination has been continuous and ongoing over several years. The discriminatory agenda is evidenced by significantly compromised patient care, including many deaths and complications that never should have occurred had proper patient care been the agenda as opposed to discrimination being the agenda. Further, permitting the discriminatory environment to persist will lead to further patient deaths and compromised care.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State or Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

2/23/17
Date    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)